UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
  JOSE ORTEGA and JOCE MARTINEZ, on their own
  behalf, and on behalf of those similarly situated,

                Plaintiffs,                           **MEMORANDUM & ORDER**

            -against-                                **15-CV-7387 (NGG) (JO)**

  UBER TECHNOLOGIES INC., RASIER, LLC, UBER USA
  LLC, UBER NEW YORK LLC, UBER
  TRANSPORTATION LLC, and JOHN DOE "UBER
  AFFILIATES,"

                Defendants.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

On March 7, 2017,[1] the court issued a Memorandum and Order granting Defendants' motion to compel arbitration as to all claims brought by Plaintiff Joce Martinez and granting in part and denying in part Defendants' motion to dismiss claims brought by Plaintiff Jose Ortega. (Mar. 7, 2017, Mem. & Order ("Mem. & Order") (Dkt. 42).) On March 22, 2017, Plaintiffs moved for "reconsideration and/or clarification" of two parts of the court's decision. (See Mot. for Recons. ("Pls. Mot.") (Dkt. 44).) For the reasons discussed below, Plaintiffs' motion is denied.

I.    **BACKGROUND**

The court assumes the parties' familiarity with the facts and procedural history of the case and so limits its discussion to the background relevant to the present motions. Plaintiffs brought this action in December 2011, alleging among other claims that Defendants (referred to collectively as "Uber") induced Plaintiffs (and other drivers) through false advertisements to

---

[1] Though the order was signed on March 7, 2017, it was not entered on the Electronic Court Filing system until March 8, 2017, and so March 8 is the relevant date for purposes of calculating the 14 day time limit for motions raised under Local Rule 6.3.

1

drive for Uber (see Am. Compl. (Dkt. 16) ¶¶ 144-153) and breached its contracts (sometimes referred to as "service agreements") with Plaintiffs by, among other things, inflating the "service fee" charged to drivers (id. at 132-33). Uber moved to dismiss all of Plaintiffs' claims for failure to state a claim upon which relief may be granted. (Mot. to Dismiss (Dkt. 22).) Uber separately moved to compel individual arbitration as to all of Martinez's claims on the basis of an arbitration provision contained within the operative service agreement. (See generally Defs. Mem. in Supp. of Mot. to Compel Arbitration (Dkt. 20).)

In its March 7, 2017, Memorandum and Order, the court agreed with Uber that Martinez had agreed not only to arbitrate his claims against Uber but also to "submit to an arbitrator any disputes relating to the interpretation or application of the arbitral clause." (See Mem. & Order at 17.) The court also concluded that Ortega had not made out a sufficient claim for breach of contract. (See id. at 39-41.) Accordingly, the court dismissed Ortega's breach of contract claim (among other claims) and held that Martinez was compelled to submit all of his claims to arbitration. (Id. at 48.)

On March 22, 2017, Plaintiffs filed the present motion for reconsideration. (See generally Pls. Mot.) Defendants submitted their opposition on April 29, 2017. (Defs. Opp'n to Pls. Mot. (Dkt. 49).)

## II. LEGAL STANDARD

Under Local Rule 6.3, a party may move for reconsideration of a previously issued order by filing a notice of motion and memorandum identifying "the matters or controlling decisions which counsel believes the Court has overlooked." Local Civ. R. 6.3. The standard for a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other

2

words, that might reasonably be expected to alter the conclusion reached by the court." Schrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Parties moving for reconsideration must generally show "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted). "A party seeking reconsideration may neither repeat arguments already briefed, considered and decided nor advance new facts, issues or arguments not previously presented to the Court." Schoolcraft v. City of N.Y., – F. Supp. 3d –, No. 10-CV-6005 (RWS), 2017 WL 1194703, at *1 (S.D.N.Y. Mar. 31, 2017) (internal quotation marks and citation omitted). "It is within the sound discretion of the district court whether or not to grant a motion for reconsideration." Markel Am. Ins. Co. v. Linhart, No. 11-CV-5094 (SJF) (GRB), 2012 WL 5879107, at *2 (E.D.N.Y. Nov. 16, 2012).

### III. DISCUSSION

Plaintiffs ask the court to reconsider its determinations that (1) Martinez's false advertising claim is subject to arbitration under his contract with Uber; and (2) Ortega failed to state a claim for breach of contract. The court examines the requests for reconsideration separately and concludes that Plaintiffs fail to provide a sufficient basis to merit revising the prior order.

#### A. Arbitrability of Martinez's False Advertising Claim

At the heart of Martinez's motion is his argument that a contract's arbitration provisions cannot be extended to cover disputes that arose prior to contracting. (See Pls. Mot. at 1.) He raised this argument in his opposition to Uber's motion to compel (see Pls. Mem. in Opp'n to Mot. to Compel (Dkt. 25) at 23-24), and correctly notes that the court did not directly address

3

this point in its decision (Pls. Mot. at 2-3). Pointing to the language of the relevant arbitration provision, which states that it "applies to all disputes between [the driver] and Uber" (Ex. F to Decl. in Supp. of Mot. to Compel ("Dec. 2015 Agreement") (Dkt. 21-6) § 15.3(i)), Martinez argues that he could not have agreed to arbitrate his false advertising claims, as they predate his agreement to arbitrate (Pls. Mot. at 2).

The court's previous opinion concluded not only that Martinez agreed to arbitrate his claims against Uber but also that he agreed to delegate the question of arbitrability itself to the arbitrator. (Mem. & Order at 16-20.) In other words, Martinez agreed that the arbitrator should decide "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." See Hartford Acc. & Indem. Co. v. Swiss Reins. Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (alteration in original) (internal quotation marks and citations omitted); see also Guan v. Uber Techs. Inc., – F. Supp. 3d –, No. 16-CV-598 (PKC) (CLP), 2017 WL 744564, at *10 (E.D.N.Y. Feb. 23, 2017) (discussing the scope of delegation under the same arbitration provision considered here). Whether Martinez's false advertising claims fall inside the scope of the claims covered by the arbitration clause is thus squarely within the realm of decisions that Martinez delegated to the arbitrator. Martinez presents no new challenge to the validity of this delegation and so provides no grounds to revisit the court's previous order. Accordingly, the motion for reconsideration as to Martinez' false advertising claim is denied.

### B. Ortega's Breach of Contract Claim

Seeking reinstatement of his breach of contract claim, Ortega argues that the court overlooked other, potentially relevant iterations of the service agreements, pointing specifically to the April 2015 and December 2015 service agreements. (Pls. Mot. at 4.) Separately, Ortega

4

also argues the court's prior order was "based on an incomplete [version of the relevant agreement] submitted by the defendants herein, which lacked the 'City Addendum.'" (Pls. Mot. at 4-5.) The court considers these points separately.

### 1. The 2015 Service Agreements

Plaintiffs' Amended Complaint alleges that, in its service agreement with drivers, Uber agrees to pay to its drivers amounts Uber collects from passengers, which includes a "Fare less UBER's applicable service fee" and, additionally, tolls, and taxes and "ancillary fees." (See Am. Compl. (Dkt. 16) ¶¶ 27, 90.) The "service fee" is calculated as a percentage of the fare, such that a higher fare results in a higher fee paid to Uber. (See id. ¶ 92.) Plaintiffs allege Uber breached its service agreements by artificially inflating the size of the fare by including taxes and ancillary fees. (Id. ¶¶ 92, 133; see also Pls. Mem. in Opp'n to Mot. to Dismiss ("Opp'n Mem.") (Dkt. 28) at 9-11.)

Plaintiffs' opposition to the motion to dismiss references two iterations of Uber's service agreement in support of its breach of contract claim. (Opp'n Mem. at 9-10.) The first of these agreements, dated June 2014, defines the "fare" as "including [] taxes and fees" (i.e. explicitly allowing Uber to collect a higher service fee by defining the taxes as part of the "fare"). (See Ex. C to Decl. in Supp. of Mot. to Dismiss (Dkt. 21-3) § 1.12.) The second referenced agreement, from November 2014, defines fare without reference to taxes and applicable fees, while separately specifying that the service fee may be calculated based on the "Fare net of such taxes" where the locality requires taxes to be included in the fare charged to a rider. (See Ex. D to Decl. in Supp. of Mot. to Dismiss ("Nov. 2014 Agreement") (Dkt. 21-4) §§ 4.1, 4.4.) Plaintiffs argued that the June 2014 definition of "fare" constituted a "concession on Uber's part that it has been inflating its service fee . . . by including taxes and other ancillary charges in the fare . . . in

5

breach of the agreements." (Opp'n Mem. at 9.) In adjudicating the Motion to Dismiss, the court found that Plaintiffs were conflating "differently defined terms in different agreements." (Mem & Order at 40). The court noted in its opinion that collecting tax-inflated service charges would be perfectly permissible under the June 2014 agreement and that the Amended Complaint presented "no indication that taxes or fees were included in the Fare under the November 2014 Agreement." (Id.)

While Ortega correctly notes that the court's decision did not address two later-in-time iterations of the service agreements, dated April 2015 and December 2015 (Pls. Mem. at 4-5), those agreements do not address the underlying issue with Ortega's claim. Plaintiffs' Amended Complaint never identifies which agreement(s) it alleges Uber breached, an essential allegation in the present case where, as discussed, the alleged "breach" was expressly valid under at least one of the relevant agreements.[2] Plaintiffs' failure to identify the agreement and terms alleged to have been breached necessitates dismissal of the claim, as the court cannot assess the plausibility of Plaintiff's claim. Cf., e.g., Window Headquarters, Inc. v. MAI Basic Four, Inc., Nos. 91-CV-1816 (MBM), 92-CV-5283 (MBM), 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993) (collecting cases) ("[A] complaint in a breach of contract action must set forth the terms of the agreement upon which liability is predicated."). Pointing to two additional agreements,[3] again without specifying that Uber breached those particular agreements, does not remedy this pleading failure, and the court is not persuaded to reconsider its prior decision.

---

[2] Plaintiffs further muddied the waters in briefing their opposition to the motion to dismiss, stating that "[t]o the extent Uber claims Plaintiffs failed to identify 'which version' of the agreement Uber breached, it is clear that each version contains virtually identical applicable contract provisions, with no material differences." (Opp'n Mem. at 11; see also id. at 11 n.15 (stating that the differences between the June 2014 agreement's definition of "Fare" and the definition of the same term in the other agreements "do not change the nature of Uber's contractual obligations to the Plaintiffs . . . and Uber's breach, which remains the same").)

[3] The court also notes that the relevant language in these two later-in-time contracts is either identical to or substantially indistinguishable from that in the November 2014 Agreement. (Compare Nov. 2014 Agreement §§ 4.1, 4.4 with Ex. E to Decl. in Supp. of Mot. to Compel (Dkt. 21-5) §§ 4.1, 4.4 and Dec. 2015 Agreement §§ 4.1, 4.4.)

2. The City Addendum

Ortega likewise seeks reconsideration based on the "City Addendum" to the June 2014 Agreement, which he states "defined what constituted the Fares paid to the plaintiffs and what service Fees would be charged by the defendant." (Pls. Mot. at 5.) He does not, however, provide the addendum or any further information as to these additional definitions, nor does he state how those definitions would be helpful to his claim. Absent further information regarding the addendum, the court declines to revisit its prior decision.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
May _1_, 2017

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge